UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| Jaime Jackson, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Cause No.: |
| | ) | |
| Sysco Grand Rapids, LLC , | ) | |
|     Defendant. | ) | |

## COMPLAINT

For her causes of action for damages and equitable relief against Defendant Sysco Grand Rapids, LLC ("Sysco" or "Defendant"), Plaintiff Jaime Jackson ("Plaintiff" or "Jackson") states:

## I. THE PARTIES AND JURISDICTION OF THE COURT

1.　　Jackson is an adult female and a resident of Porter County in the State of Indiana.

2.　　Sysco is a limited liability company engaged in the business of supplying restaurants and institutions such as nursing homes and hospitals with food and food service merchandise and equipment.  Sysco does business in the following counties in the State of Indiana: Porter County, La Porte County, Lake County, St. Joseph County, and Marshall County.

3.　　From August 2009, until May 9, 2013, Plaintiff was an employee of Defendant.  When first hired, Plaintiff held the position of Marketing Associate.  At the time of her discharge from employment, Plaintiff held the position of New Market Manager and was assigned to develop new business in the Northern Indiana of cities of South Bend, Mishawaka, Valparaiso, and La Porte.  Plaintiff conducted her work for Defendant from an

office in Plaintiff's home in Porter County, Indiana, and in the Northern Indiana counties of St. Joseph, La Porte, Porter, Marshall, and Lake. A substantial part of the acts about which Plaintiff complains occurred in the Northern Indiana counties of St. Joseph, La Porte, Porter, Marshall, and Lake.

4.      At all pertinent times, Defendant was and is an employer as that term is defined in the Civil Rights Act of 1964 found at 42 U.S.C. §§ 2000e-1 *et seq*.

5.      On May 9, 2013, Defendant terminated the employment of Plaintiff in violation of Plaintiff's rights under the Civil Rights Act of 1964 and in violation of Defendant's contract and agreement with Plaintiff.

6.      Jurisdiction and venue of the United States District Court for the Northern District of Indiana, South Bend Division is predicated upon the Civil Rights Act of 1964,  28 U.S.C. § 1331, and 28 U.S.C. § 1391 (b) (2).

## II. THE FACTUAL ALLEGATIONS

7.      After being hired by Defendant in August 2009, Plaintiff worked successfully as a Marketing Associate assigned to Northern Indiana.

8.      In February 2011, Defendant approached Plaintiff and requested that Plaintiff consider accepting a newly created position with Defendant, which position was described by Defendant as the New Market Manager for the geographic areas of the following cities in Northern Indiana: South Bend, Culver, Plymouth, Mishawaka, Valparaiso, and La Porte .

9.      Because of the success she was experiencing in her job of Marketing Associate, and because of the ill-defined concept of the new position, Plaintiff was reluctant to accept this new assignment.

10.     To induce Plaintiff to accept the new position, Defendant promised Plaintiff that

if the new position did not work out satisfactorily, she could and would be returned to her original position of Marketing Associate for Northern Indiana.

11.     In justifiable reliance on Defendant's promise, Plaintiff agreed to accept the new position and began work as the New Market Manager for Northern Indiana in April 2011.

12.     After Plaintiff began her new position as a New Market Manger, Defendant assigned one of its employees named Bob Yaeger to supervise Plaintiff.

13.     Yaeger did not like the fact that Plaintiff was female and began to systematically treat Plaintiff differently because of her gender.  On one memorable occasion, Plaintiff had driven one of her important business prospects, Sam Barakat, to Grand Rapids, Michigan, to meet with Yaeger to discuss expanding Barakat's business relationship with Sysco.  Upon arrival, Yaeger took Barakat into a private room and excluded Plaintiff because of her gender by proclaiming that the "men" would talk.

14.     Plaintiff was embarrassed and humiliated by Yaeger's conduct and reported that conduct to Sysco's Human Resources department.

15.     Defendant's Human Resources Department promised Plaintiff that it would investigate the incident.

16.     Plaintiff made multiple complaints to multiple persons at Sysco about Yaeger's treatment of Plaintiff on account of her gender, including the following complaints:

a.     On September 22, 2011, Plaintiff complained to Dana Carnevale, one of Defendant's Regional Directors, via phone on car ride to Traverse City after Yeager excluded Plaintiff from an important meeting. Carnevale was upset that Plaintiff was not present at the meeting and Plaintiff explained to Carnevale that Yaeger had specifically told Plaintiff not to attend and that Plaintiff felt after a conversation with Yaeger the previous day that she was being segregated because she was female.

b.      On September 28, 2011, Yaegar excluded Plaintiff from the meeting with Barakat and made direct comments, in front of Barakat, that Plaintiff was being excluded because she was female.   Plaintiff complained to Defendant's Vice-President Amy Campbell about this behavior.

c.      On April 23, 2012, Yaeger refused to assist Plaintiff when she expressed concerns about the possible loss of a large account.   Plaintiff had asked for Yaeger's involvement, but Yaeger instead sent an underling.  On this occasion, Plaintiff complained about Yaeger's behavior to Defendant's District Manager Greg Malin.  Plaintiff told Malin that she felt Yaegar's lack of involvement with her was because she was female and that the male managers were not being treated the same as her

d.      On many occasions Plaintiff complained to Jim Macqueen, Business Development Manager of Defendant, about the way she was being treated by Yaegar and that she felt she was being treated differently because she was female. Like Plaintiff, Macqueen, a male, also reported to Yaeger and confirmed to Plaintiff that that he was not experiencing the same issues with Yaeger that Plaintiff was experiencing.

e.      On many other occasions Plaintiff complained to Defendant's District Manager, Mary Harmer, about the way Plaintiff was being treated by Yaegar and that Plaintiff felt that the disparate treatment was because she was female. Harmer did not report to Bob Yaegar.

f.      On July 12, 2012, Plaintiff phoned Amy Campbell, Defendant's Vice President of Human Resources, to ask for help with the problems she was having with Yaegar, including his numerous sexist remarks.  Plaintiff explained to Campbell and that Plaintiff felt she was being treated differently because of her gender. Campbell agreed to work on a resolution.

g.    During the week of July 16th, 2012, Plaintiff complained to Ken Downes, Defendant's Director of National Accounts, in his office, regarding the issues she was having with Yaegar both professionally and emotionally because she was being segregated as a female.

h.    On July 23, 2012, Plaintiff phoned Campbell to get a follow up on her complaints against Yaeger.  Campbell reported she was "still working on it" and that she was preparing to have a conversation with Yaeger about Plaintiff's accusations.

i.    During the week of August 20, 2012, Plaintiff received a phone call from Malin advising that Yaeger requested that Plaintiff stop reporting to him and begin reporting to Malin.   This request was part of Yaeger's conduct designed to make Plaintiff fail because she was female.  Malin, who was a lower level of management at Defendant, did not have the resources to support Plaintiff's new position.   Plaintiff told Malin that she felt this was action by Yaeger was an act of direct retaliation for the prior complaints she had made about Yaeger.

j.    During the week of August 20, 2012, after speaking to Malin, Plaintiff phoned Campbell, Defendant's Vice President of Human Resources, to let her know the action Yaegar had taken. Campbell advised that she had not been notified of this decision and that such a reassignment was not the correct decision for Plaintiff's position. Plaintiff then complained to Campbell that she (Plaintiff) believed that this action by Yaeger was taken in retaliation for Plaintiff's prior in-house complaints about Yaeger.  Campbell did not disagree.

17.    Between August 20, 2012, and May 9, 2013, Yaeger continued to retaliate against Plaintiff for her in-house complaints about him by not returning phone calls, not communicating with Plaintiff, not attending meetings with Plaintiff, excluding Plaintiff from meetings, and denying Plaintiff's request for vacation time off claiming that Plaintiff was

"used up". These acts of retaliation were both subtle and overt and were intended by Yaeger to punish Plaintiff for complaining about him and to sabotage her work performance.

18.     Despite the numerous complaints Plaintiff had made to numerous managers of Defendant, Defendant never took any action to quell or stop the retaliatory behavior of Yaeger.

19.     On May 7 and May 8, 2013, Plaintiff was in attendance at a training session in Grand Rapids, Michigan, for New Market Managers. While at that training session, Plaintiff, despite being congratulated for her excellent work by the Defendant's President, discovered that Defendant was paying newly hired male New Market Managers more than she was being paid.

20.     On May 8, 2013, Plaintiff requested a meeting with Defendant's Regional Manager Dana Carnevale to discuss this disparate pay, which Plaintiff reasonably believed to be gender based and yet another act of retaliation by Yaeger. Carnevale agreed to meet with Plaintiff on May 9, 2013, to discuss her concerns.

21.     On May 9, 2013, when Plaintiff arrived for here meeting with Carnevale, she discovered that Yaeger, although uninvited, was also present.   Nevertheless, Plaintiff immediately voiced her concerns about the disparate pay. In response, Yaeger commented that he expected her to complain about that issue and that she was being fired from her employment with Sysco.   At the time Yaeger fired Plaintiff, he made it a point to reference Plaintiff's complaints about him and her complaint about disparate pay as being the reasons for her termination. As he fired Plaintiff, Yaeger labeled Plaintiff's complaint about disparate pay as being "disruptive".

22.     On May 9, 2013, after being fired by Yaeger and as she was driving to her home from Grand Rapids, Michigan, Plaintiff received a phone call from Campbell advising

that Yaeger's firing of her had not been approved by Human Resources, that Yaeger had overstepped his authority, that Yaeger had not followed proper corporate protocol, and asking Plaintiff to return to Grand Rapids.  Because of her emotional upset and state of high distress and anxiety Plaintiff declined this invitation and continued driving to her home.

23.     At no time did Defendant honor its agreement with Plaintiff that called for Plaintiff to be returned to her original position of Marketing Associate if her stint as a New Market Manager did not work out.

24.     On or about July 30, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission as per copy attached hereto designated Exhibit 1 and incorporated by reference.

25.     On April 22, 2014, the EEOC issued Plaintiff a notice of suit rights, as per copy attached as Exhibit 2.  Plaintiff received Exhibit 2 on or about April 28, 2014.

26.     Plaintiff has complied with all administrative procedural prerequisites prior to filing this action.

## Count I – Violation of Civil Rights Act of 1964

1-26.   Plaintiff incorporates by reference pleading paragraphs 1-26 above as if fully set forth herein.

27.   The above referenced acts of Defendant violate of the rights of Plaintiff under the Civil Rights Act of 1964 and constitute unlawful retaliation.

28.     Plaintiff has been compelled to hire an attorney to represent her in these matters and is entitled to an award of attorney's fees and costs of litigation.

29.     Because of the unlawful acts of Defendant, Plaintiff has been deprived of employment, has lost wages, has lost fringe benefits of employment, and is entitled to the following relief: back pay (including fringe benefits), punitive damages, front pay,

reinstatement to employment, other appropriate and injunctive relief, and an award of attorney's fees, costs and expenses of pursuing this action.

**Count II – Breach of Contract**

1-29.   Plaintiff incorporates by reference pleading paragraphs 1-29 above as if fully set forth herein.

30.   The act of Defendant of terminating Plaintiff's employment as a New Marker Manager without returning her to the position of Marketing Associate constitutes a breach of Defendant's contacts with Plaintiff.

31.   Because of Defendant's breach of contract, Plaintiff has been damaged and has been deprived of employment, has lost wages, has lost fringe benefits of employment, and is entitled to the following relief: the benefit of her bargain, back pay (including fringe benefits), punitive damages, front pay, instatement or reinstatement to employment, other appropriate injunctive relief, and an award of attorney's fees, costs and expenses of pursuing this action.

FOR ALL OF THE ABOVE REASONS, Plaintiff prays for judgment against Defendant for all such relief as may be appropriate under the Civil Rights Act of 1964, and for breach of contract, including, without limitation, back pay, front pay, injunctive relief, instatement and/or reinstatement to employment, punitive damages, pre-judgment interest, attorney's fees, costs, and all other just and proper relief in the premises.

**Newby, Lewis, Kaminski & Jones, LLP**

By_____

Mark L. Phillips, Attorney #5860-46
Attorney for Plaintiff
916 Lincolnway, P.O. Box 1816
La Porte, Indiana  46350-1816
Telephone: (219) 362-1577
E-mail: mlphillips@nlkj.com

## JURY DEMAND

Plaintiff, by counsel, now demands trial by jury as to all issues.

**Newby, Lewis, Kaminski & Jones, LLP**

By_____
Mark L. Phillips, Attorney #5860-46
Attorney for Plaintiff
916 Lincolnway, P.O. Box 1816
La Porte, Indiana  46350-1816
Telephone: (219) 362-1577
E-mail: mlphillips@nlkj.com